IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ANTARES PHARMA, INC.,<br>Plaintiff,<br>v.<br>GORDON SILVER LIMITED,<br>Defendant. | Civil Action No. 24-634-GBW |

**MEMORANDUM ORDER**

Pending before the Court is Defendant Gordon Silver Limited's ("Gordon Silver" or "Defendant") Objections to the Special Master's July 9, 2026, Order Granting Plaintiff's Motion to Disqualify Defendant's Expert and Strike the Expert Report (D.I. 144) ("Defendant's Objections"), which Plaintiff Antares Pharma, Inc. ("Antares" or "Plaintiff") opposes (D.I. 147). For the reasons below, Defendant's Objections are overruled and the Special Master's Order is adopted.

# I. BACKGROUND

## A. Factual Background[1]

Antares is a pharmaceutical company that owns exclusive rights to the United States trademark for the name "ANTARES PHARMA." D.I. 4 ¶ 17. Antares entered into a Licensing Agreement to commercialize TLANDO, "an oral testosterone product for testosterone replacement

[1] This section is drawn from the allegations in Plaintiff's Complaint (D.I. 4) for background purposes only. The Court recognizes that Defendant likely disputes the veracity of Plaintiff's allegations.

therapy in adult males indicated for conditions associated with a deficiency or absence of endogenous testosterone: primary hypogonadism (congenital or acquired) and hypogonadotropic hypogonadism (congenital or acquired)." *Id.* ¶¶ 3, 19. The "ANTARES PHARMA" trademark is found on labels for Antares-branded TLANDO products. *Id.* ¶ 18.

On January 24, 2024, Antares and Lipocine, Inc. ("Lipocine") entered into an agreement called the Transition Services Agreement ("TSA"). *Id.* ¶ 22. That same day, Lipocine "assigned the TSA to [Gordon Silver]." *Id.* ¶ 23. The TSA "enabled Gordon Silver to purchase Licensed Products, such as TLANDO finished goods packaged and labeled for consumer use, as well raw materials, excipients and active pharmaceutical ingredients from Antares." *Id.* ¶ 24. The TSA also "granted [Gordon Silver] a limited license to purchase inventory of TLANDO, including finished products that contain Antares' trademarks, tradenames, logos, trade dress and NDC number ('Purchased Finished Product'), and to use and sell such Purchased Finished Product before the expiration of the Sell-off Period defined in the TSA." *Id.* ¶ 28. Upon execution of the TSA, Gordon Silver ordered various Purchased Finished Products. *Id.* ¶ 35. Antares alleges that, after expiration of the Sell-Off Period, Gordon Silver continued to sell various Purchased Finished Products. *Id.* ¶ 50.

**B. Procedural Background**

On May 28, 2024, Plaintiff filed its Complaint in this Court against Defendant Gordon Silver and former Defendant Verity Pharmaceuticals, Inc ("Verity"). *See generally* D.I. 4. The Complaint includes claims of trademark infringement and breach of contract against Gordon Silver, along with claims of contributory trademark infringement and tortious interference with contract against Verity. D.I. 4 at 13-20. Verity was dismissed from this action on November 6, 2025. D.I. 66. Only Plaintiff's claims against Gordon Silver remain.

On June 15, 2026, the Court appointed Special Master Karen E. Keller, Esq. (the "Special Master") to resolve all pending and future discovery disputes in this action. D.I. 137. On June 30, 2026, Plaintiff filed a Motion to Disqualify Defendant's Expert ("Plaintiff's Motion"). D.I. 138. Following oral argument on July 6, 2026, the Special Master granted Plaintiff's Motion, disqualifying Defendant's expert Jennifer Ahearn ("Ms. Ahearn") and striking her opening report. D.I. 139.

## II. LEGAL STANDARDS

### A. Special Master Objections

Federal Rule of Civil Procedure 53(f) specifies the manner in which courts review objections to orders from special masters. Rule 53(f)(3) provides that the Court's standard of review for objections to questions of fact is, unless the Court approves otherwise, *de novo*. Rule 53(f)(4) provides that the Court's standard of review for objections to questions of law is likewise *de novo*.

### B. Motions to Strike an Expert Report

Pursuant to Federal Rule of Civil Procedure 16(f), a court may impose sanctions (such as the exclusion of expert testimony), including those authorized by Rule 37(b)(2)(A), if, *inter alia*, a party "fails to obey a scheduling or other pretrial order." Fed. R. Civ. P. 16(f)(l)(C); *see also INVISTA N. Am. S.a.r.l. v. M & G USA Corp.*, C.A. No. 11-1007-SLR-CJB, 2013 WL 3216109, at *2 (D. Del. June 25, 2013). Although a court clearly has the authority to strike an expert report and/or exclude evidence (such as expert testimony) pursuant to Rule 37, it should be mindful that because "[t]he exclusion of critical evidence is an extreme sanction," such a remedy should not be imposed where an untimely or improper disclosure amounts to only a "slight deviation from pre-trial notice requirements" or occasions only "slight prejudice" to the movant. *In re Paoli R.R. YarPCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994) (internal quotation marks and citations

omitted). Instead, exclusion should be reserved for circumstances amounting to "willful deception or flagrant disregard of a court order by the proponent of the evidence." *Id.* at 792 (internal quotation marks and citations omitted); *see also Bridgestone Sports Co., Ltd. v. Acushnet Co.*, No. CIVA 05-132 JJF, 2007 WL 521894, at *4 (D. Del. Feb. 15, 2007) (noting that while the decision to exclude expert testimony is context-specific, "evidence should be excluded sparingly and only in circumstances involving litigation conduct that is clearly unprofessional or inappropriate, and in circumstances creating prejudice to the party against whom the evidence is offered"); *Praxair, Inc. v. ATML Inc.*, 231 F.R.D. 457, 463 (D. Del. 2005) (finding that although "the exclusion of otherwise admissible testimony because of a party's failure to meet a timing requirement is a harsh measure [that] should be avoided where possible[,]" it can be appropriate to prevent against the "flouting of discovery deadlines[,]" so as to maintain "fidelity to the constraints of Scheduling Orders and deadlines[, which] is critical to the Court's case management responsibilities") (internal quotation marks and citations omitted), *rev'd on other grounds*, 543 F.3d 1306 (Fed. Cir. 2008).

In considering whether to exclude evidence relating to an untimely or otherwise improper disclosure, the United States Court of Appeals for the Third Circuit has directed district courts to weigh certain factors, known as "the *Pennypack* factors": (1) the surprise or prejudice to the moving party; (2) the ability of the moving party to cure any such prejudice; (3) the extent to which allowing the testimony would disrupt the order and efficiency of trial; (4) bad faith or willfulness in failing to comply with the court's order; and (5) the importance of the testimony sought to be excluded. *See Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977), *overruled on other grounds*, *Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985); *see also Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997).

### C. Motions to Disqualify an Expert Witness

The Court has the inherent power to disqualify an expert based on the "duty to preserve confidence in the fairness and integrity of judicial proceedings." *Merck Sharp & Dohme Corp. v. Teva Pharms. USA, Inc.*, C.A. No. 14-874-SLR/SRF, 2015 WL 5163035, at *2 (D. Del. Sept. 3, 2015). Courts apply a two part test: "(1) was it objectively reasonable for the party seeking disqualification to have concluded that a confidential relationship existed with the expert; and (2) was confidential or privileged information actually disclosed to the expert." *Butamax Advanced Biofuels LLC v. Gevo, Inc.*, C.A. No. 11-54-SLR, 2012 WL 4815593, at *1 (D. Del. Oct. 10, 2012). An expert should be disqualified "if both inquiries are answered in the affirmative." *AstraZeneca LP v. Breath Ltd.*, No. CV 08-1512 (RMB/AMD), 2011 WL 13398720, at *2 (D.N.J. Sept. 30, 2011). Courts also consider the public interest in allowing or not allowing the expert to testify. *Merck*, 2015 WL 5163035 at *2. "The policy objectives in favor of disqualification include the court's interest in preventing conflicts of interest and in maintaining judicial integrity. The policy objectives weighing against disqualification include maintaining accessibility to experts with specialized knowledge and encouraging experts to pursue their professions." *Butamax*, 2012 WL 4815593, at *2. The party seeking disqualification bears the burden of proof with respect to these considerations. *Syngenta Seeds, Inc. v. Monsanto Co.*, C.A. No. 02-1331-SLR, 2004 WL 2223252, at *2 (D. Del. Sept. 27, 2004).

## III. DISCUSSION

The Court reviews the Special Master's findings *de novo*.[2] Upon such review, the Court finds that disqualification of Defendant's expert and exclusion of her testimony is appropriate.

---

[2] Plaintiff contends that the instant issue is a "procedural matter" reviewable for only abuse of discretion. D.I. 147 at 4. The Court disagrees that the decision to exclude expert testimony and disqualify an expert in this instance is merely procedural, because it involves factual questions

### A. The Court Finds That Excluding Defendant's Expert's Testimony Is Warranted

#### 1. Prejudice to Plaintiff

The first *Pennypack* factor weighs in favor of Plaintiff. Pursuant to ¶ 7 of the Protective Order, before a party may disclose confidential information to an expert, that party must first identify the expert, list any prior or current employments or consultancies for any party to the litigation within the last five years, execute an acknowledgement and agreement to be bound from the expert, and provide notice to the other party. D.I. 60 ¶ 7(a). It is not meaningfully disputed that Defendant did not follow the relevant Protective Order procedures before giving Plaintiff's confidential information to Ms. Ahearn. *See* D.I. 144 at 2-3 (providing a timeline of events). Rather, the parties mainly dispute whether Defendant's failure to follow procedures was essentially a technicality (Defendant's position) (*see* D.I. 144 at 6), or whether it resulted in the disclosure of "confidential, protected information to an expert whose retention created a clear conflict of interest" (Plaintiff's position). D.I. 147 at 1.

The Court finds that the prejudice to Plaintiff from Defendant's violation of the Protective Order is evident. Ms. Ahearn submitted a report for Defendant in this litigation, through which she accessed Plaintiff's quality agreement documents that were designated confidential (and later produced in discovery as "Highly Confidential – Attorneys' Eyes Only"). *See* D.I. 144, Ex. 4; D.I. 147 at 2. Although Plaintiff should have marked "Highly Confidential – Attorneys' Eyes Only" documents as such in the first instance, Defendant erred by prematurely giving Ms. Ahearn access to those documents, regardless of whether they were marked "Confidential" or "Highly Confidential – Attorneys' Eyes Only." Plaintiff should have been afforded the opportunity to

---

regarding the scope of Ms. Ahearn's previous involvement with Plaintiff, and her use of Plaintiff's confidential information in forming her opinions.

object to Defendant's engagement of Ms. Ahearn as an expert. Because Plaintiff was not given this opportunity, Plaintiff was prejudiced both by (1) Defendant's disclosure of confidential materials to an expert that Plaintiff would have objected to for conflicts of interest if given the proper notice, and (2) Ms. Ahearn's reliance on documents to which she should never have had access in forming her opinions in this litigation.

Also of note, Ms. Ahearn was recently engaged in a consulting relationship with Plaintiff whereby Ms. Ahearn conducted a "due diligence assessment of an evaluation of [Plaintiff's] quality management system." D.I. 153, Special Master Hearing Tr. 11:11-12. In this capacity, Ms. Ahearn "was exposed to confidential and commercially sensitive information concerning [Plaintiff's] quality systems and operations, and compliance materials associated with [Plaintiff's] products on issues here." *Id.* 11:19-21, 12:2-6. However, the Court generally finds speculative Plaintiff's argument that Ms. Ahearn could have used previously acquired confidential knowledge about TLANDO in forming her present opinions, for reasons articulated *infra* Section III.B. Thus, this consideration is neutral for purposes of the first *Pennypack* factor.

In light of the above reasons, the Court finds that Plaintiff has been prejudiced by Ms. Ahearn viewing Plaintiff's highly confidential documents, which favors excluding Ms. Ahearn's report.

**2. Ability of Plaintiff to Cure Such Prejudice**

The second *Pennypack* factor also favors Plaintiff. Specifically, the Court agrees with Plaintiff that "[o]nce improper disclosure occurred, Antares lost the benefit of the objection process the Protective Order guaranteed, and that prejudice and harm cannot be undone." D.I. 147 at 6. Plaintiff has demonstrated that it had a confidential relationship with Ms. Ahearn regarding FDA regulatory work (*see infra* Section III.B), and that it was unable to object to Defendant's disclosure of Ms. Ahearn before Defendant improperly gave Ms. Ahearn Plaintiff's confidential

documents. The Court agrees that Plaintiff cannot cure that prejudice. Defendant has not provided persuasive arguments to the contrary, instead only explaining that Defendant timely disclosed Ms. Ahearn according to the case schedule, and that it cured ¶ 7 timing concerns by "providing protections for the materials and schedule accommodations." D.I. 144 at 8. Although Defendant has tried to mend its error, Ms. Ahearn cannot unsee the documents that were designated "Highly Confidential – Attorneys' Eyes Only" and relied on in her report. The best cure in this instance is for Defendant to submit a new report from a new expert, following all of the procedures and confidentiality terms set forth in the Protective Order. Thus, this factor weighs in favor of Plaintiff.

**3. Likelihood of Disruption to Trial**

Regarding the third *Pennypack* factor, the Court has not identified any potential disruptions to the trial schedule that would occur by allowing the expert's testimony. The trial date is approximately two years away. D.I. 141; *See In re Paoli R.R. Yard PCB Litig. v. Brown*, 35 F.3d 717, 740-741, 740 n. 6 (3d Cir. 1994) (weighing the "proximity of the trial date" in evaluating the exclusion of expert testimony). The parties have also repeatedly stipulated to extend various deadlines, including deadlines for expert reports and discovery. D.I. 152. Given the distant trial date and time built into the case schedule, the third *Pennypack* factor weighs against Plaintiff.

**4. Bad Faith or Willfulness**

Regarding the fourth *Pennypack* factor, the Court has not identified any bad faith or willfulness on the part of Defendant. This dispute does not arise from a pattern of bad conduct by either party. *See TQ Delta LLC v. Comcast Cable Commc'ns LLC*, C.A. No. 15-611-GBW, 2023 WL 7920930, at *4 (D. Del. Nov. 16, 2023) (weighing a "pattern of disclosure violations"). Rather, this dispute appears to result from missteps on the part of both parties: (1) the version of the document Ms. Ahearn reviewed was only marked "Confidential", not "Highly Confidential – Attorneys' Eyes Only," and (2) Defendant violated ¶ 7 of the Protective Order. Plaintiff has not

accused Defendant of bad faith or willfulness either. *See generally* D.I. 147 (not discussing bad faith or willfulness). Thus, the Court finds that this factor weighs against Plaintiff.

**5. Importance of the Testimony Sought**

As for the fifth *Pennypack* factor, the Court acknowledges that the testimony Ms. Ahearn has proffered is relevant to the claims in this case. Specifically, her analysis "concerns regulatory requirements as they relate to [Defendant's] timeline for product labeling and whether supply-chain and quality procedures were complied with by [Plaintiff] in handling the API." D.I. 144 at 8. Nevertheless, the Court finds that any weight afforded to the importance of the testimony sought is neutralized by Defendant's ability to serve an updated expert report in advance of the newly stipulated deadline. *See* D.I. 152.

On balance, the Court finds that the *Pennypack* factors favor excluding Ms. Ahearn's testimony based on the prejudice the testimony presents and the inability of Plaintiff to cure such prejudice. While the third, fourth, and fifth *Pennypack* factors are either neutral or cut against Plaintiff, the Court finds that these factors are outweighed by the prejudice resulting from Defendant's engagement of an expert with which Plaintiff arguably has a conflict, and the disclosure of sensitive materials to that expert, without any prior notice to Plaintiff. Thus, even though Defendant's conduct does not amount to bad faith, the Court finds that Defendant's violation of the Protective Order was a serious error that cannot be cured other than by excluding Ms. Ahearn's testimony. Moreover, there is time for Defendant to obtain and serve a new report from a new expert to replace Ms. Ahearn's excluded report.

For all the above reasons, the Court overrules Defendant's objections and finds that exclusion of Ms. Ahearn's testimony is appropriate.

### B. The Court Finds That Disqualifying Defendant's Expert Is Warranted

In considering whether Ms. Ahearn should be disqualified, the Court looks at (1) whether it was objectively reasonable for Plaintiff to have concluded that a confidential relationship existed with Ms. Ahearn; and (2) whether confidential or privileged information was actually disclosed to Ms. Ahearn. *Butamax*, 2012 WL 4815593, at *1. Regarding the first prong, the Court finds that it was objectively reasonable for Plaintiff to have concluded that a confidential relationship existed between Ms. Ahearn and Plaintiff. Plaintiff has provided a copy of a Consulting Agreement ("Consulting Agreement") executed between Plaintiff and Ms. Ahearn dated July 19, 2023. D.I. 147, Ex. 6. In the Consulting Agreement, Ms. Ahearn agreed to "keep confidential and not publish or otherwise disclose to third parties or use for any purpose other than as permitted by this Agreement, any Confidential Information received from Antares without the express written consent of Antares." *Id.* ¶ 4.2; *see also id.* ¶¶ 4.3-4.7 (outlining terms of confidentiality). The terms of confidentiality set forth in the Consulting Agreement "shall survive for a period of ten (10) years following the earlier of the expiration or termination of this Agreement" (*id.*¶ 4.7), a date that, while unspecified, would be well beyond the date of Ms. Ahearn's expert report in this litigation.

However, as for the second prong, Plaintiff has not persuasively demonstrated that any confidential or privileged information about TLANDO was actually disclosed to Ms. Ahearn pursuant to the Consulting Agreement. The only citation Plaintiff provides is one to Ms. Ahearn's report, without offering any detail of how that demonstrates Plaintiff's disclosure of confidential information to Ms. Ahearn. Plaintiff does not provide any other evidence to the Court—such as internal documents, litigation strategy, or executive interviews—that show Plaintiff's disclosure of confidential information. *Cf. Chervon (Hk) Ltd. v. One World Techs., Inc.*, No. C.A No. 19-1293-GBW, 2024 WL 6839573, at *3 (D. Del. Mar. 26, 2024) (finding disqualification appropriate

where the party's expert recounted learning sensitive confidential information that was relevant to the litigation). Instead, Plaintiff draws an unsupported conclusion that since Ms. Ahearn had *access* to Plaintiff's confidential information pursuant to the Consulting Agreement, she *actually had* confidential information.

Nevertheless, in light of the policy considerations, the Court finds disqualification appropriate in this instance. Specifically, the Court has an interest in "preventing conflicts of interest and in maintaining judicial integrity." *Butamax*, 2012 WL 4815593, at *2. Two facts raise concern for this Court. The first is that Ms. Ahearn has already viewed a document designated "Highly Confidential – Attorney's Eyes Only," a document which she cannot unsee, and which the Court worries could inform any opinions she gives in this litigation. The second is that Ms. Ahearn had a very recent consulting relationship with Plaintiff related to FDA regulatory work. The parties dispute whether the Consulting Agreement is inactive or ongoing. *See* D.I. 147, Ex. 6, ¶ 3 (describing terms of termination of the Consulting Agreement). If it *is* ongoing, Ms. Ahearn is subject to a non-compete provision that may present a conflict in this litigation. *See* D.I. 147, Ex. 6, ¶ 25. But even if the Consulting Agreement is inactive, Ms. Ahearn still has an obligation of confidentiality to Plaintiff regarding her services relating to FDA regulatory work. *Id.* ¶ 4; D.I. 147 at 9. Given the lack of information available for the Court to conclude whether Ms. Ahearn's relationship with Plaintiff is inactive or ongoing, and the concerns of confidentiality between Plaintiff and Ms. Ahearn based on the services she has recently provided Plaintiff, the Court finds that the risk of conflict between Plaintiff and Ms. Ahearn in this litigation is too high. The best course of action is instead for Defendant to find another expert to provide a substitute report, and there is time to do so.

For all the above reasons, the Court overrules Defendant's objections and finds that disqualification of Ms. Ahearn as Defendant's expert is appropriate in the interest of preventing conflicts of interest and preserving judicial integrity.

## IV. CONCLUSION

For the above reasons, Defendant's Objections (D.I. 144) are overruled and the Special Master's Order (D.I. 139) is adopted.

* * *

WHEREFORE, at Wilmington this 2nd day of September 2026, **IT IS HEREBY ORDERED** that Defendant Gordon Silver Limited's Objections to the Special Master's July 9, 2026, Order (D.I. 144) is **OVERRULED** and the Special Master's Order granting Plaintiff's Motion to Disqualify Defendant's Expert (D.I. 139) is **ADOPTED**.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE