**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| ANTARES PHARMA, INC.,<br><br>Plaintiff,<br><br>v.<br><br>GORDON SILVER LIMITED,<br><br>Defendant. | Civil Action No. 24-634-GBW |

**MEMORANDUM ORDER**

Pending before the Court is Defendant Gordon Silver Limited's ("Gordon Silver" or "Defendant") Objections to the Special Master's August 28, 2026 Order (D.I. 155) ("Defendant's Objections"), which Plaintiff Antares Pharma, Inc. ("Antares" or "Plaintiff") opposes (D.I. 161). For the reasons below, Defendant's Objections are overruled and the Special Master's Order is adopted.

## I. BACKGROUND

### A. Factual Background[1]

Antares is a pharmaceutical company that owns exclusive rights to the United States trademark for the name "ANTARES PHARMA." D.I. 4 ¶ 17. Antares entered into a Licensing Agreement to commercialize TLANDO, "an oral testosterone product for testosterone replacement therapy in adult males indicated for conditions associated with a deficiency or absence of

[1] This section is drawn from the allegations in Plaintiff's Complaint (D.I. 4) for background purposes only. The Court recognizes that Defendant likely disputes the veracity of Plaintiff's allegations.

endogenous testosterone: primary hypogonadism (congenital or acquired) and hypogonadotropic hypogonadism (congenital or acquired)." *Id.* ¶¶ 3, 19. The "ANTARES PHARMA" trademark is found on labels for Antares-branded TLANDO products. *Id.* ¶ 18.

On January 24, 2024, Antares and Lipocine, Inc. ("Lipocine") entered into an agreement called the Transition Services Agreement ("TSA"). *Id.* ¶ 22. That same day, Lipocine "assigned the TSA to [Gordon Silver]." *Id.* ¶ 23. The TSA "enabled Gordon Silver to purchase Licensed Products, such as TLANDO finished goods packaged and labeled for consumer use, as well as raw materials, excipients and active pharmaceutical ingredients from Antares." *Id.* ¶ 24. The TSA also "granted [Gordon Silver] a limited license to purchase inventory of TLANDO, including finished products that contain Antares' trademarks, tradenames, logos, trade dress and NDC number ('Purchased Finished Product'), and to use and sell such Purchased Finished Product before the expiration of the Sell-Off Period defined in the TSA." *Id.* ¶ 28. Upon execution of the TSA, Gordon Silver ordered various Purchased Finished Products. *Id.* ¶ 35. Antares alleges that, after expiration of the Sell-Off Period, Gordon Silver continued to sell various Purchased Finished Products. *Id.* ¶ 50.

### B. Procedural Background

On May 28, 2024, Plaintiff filed its Complaint in this Court against Defendant Gordon Silver and former Defendant Verity Pharmaceuticals, Inc ("Verity"). *See generally* D.I. 4. The Complaint includes claims of trademark infringement and breach of contract against Gordon Silver, along with claims of contributory trademark infringement and tortious interference with contract against Verity. D.I. 4 at 13-20. Verity was dismissed from this action on November 6, 2025. D.I. 66. Only Plaintiff's claims against Gordon Silver remain.

On June 15, 2026, the Court appointed Special Master Karen E. Keller, Esq. (the "Special Master") to resolve all pending and future discovery disputes in this action. D.I. 137. On July 27,

2026, Defendant filed a motion for discovery relief. D.I. 142. Following oral argument on August 10, 2026, the Special Master denied Defendant's motion to (1) strike Plaintiff's damages contentions in its Supplemental and Second, Third, and Fourth Amended Rule 26 disclosures, (2) compel discovery as to API shipping information, and (3) compel former employee contact information. D.I. 155.

## II. LEGAL STANDARDS

### A. Special Master Objections

Federal Rule of Civil Procedure 53(f) specifies the manner in which courts review objections to orders from special masters. Rule 53(f)(3) provides that the Court's standard of review for objections to questions of fact is, unless the Court approves otherwise, *de novo*. Rule 53(f)(4) provides that the Court's standard of review for objections to questions of law is likewise *de novo*.

### B. Motions to Strike

Although a court clearly has the authority to strike and/or exclude evidence pursuant to Rule 37, it should be mindful that because "[t]he exclusion of critical evidence is an extreme sanction," such a remedy should not be imposed where an untimely or improper disclosure amounts to only a "slight deviation from pre-trial notice requirements" or occasions only "slight prejudice" to the movant. *In re Paoli R.R. YarPCB Litig.*, 35 F.3d 717, 791-92 (3d Cir. 1994) (internal quotation marks and citations omitted). Instead, exclusion should be reserved for circumstances amounting to "willful deception or flagrant disregard of a court order by the proponent of the evidence." *Id.* at 792 (internal quotation marks and citations omitted); *see also Bridgestone Sports Co., Ltd. v. Acushnet Co.*, No. CIVA 05-132 JJF, 2007 WL 521894, at *4 (D. Del. Feb. 15, 2007) (noting that while the decision to exclude expert testimony is context-specific, "evidence should be excluded sparingly and only in circumstances involving litigation

conduct that is clearly unprofessional or inappropriate, and in circumstances creating prejudice to the party against whom the evidence is offered"); *Praxair, Inc. v. ATML Inc.*, 231 F.R.D. 457, 463 (D. Del. 2005) (finding that although "the exclusion of otherwise admissible testimony because of a party's failure to meet a timing requirement is a harsh measure [that] should be avoided where possible[,]" it can be appropriate to prevent against the "flouting of discovery deadlines[,]" so as to maintain "fidelity to the constraints of Scheduling Orders and deadlines[, which] is critical to the Court's case management responsibilities") (internal quotation marks and citations omitted), *rev'd on other grounds*, 543 F.3d 1306 (Fed. Cir. 2008).

In considering whether to exclude evidence relating to an untimely or otherwise improper disclosure, the United States Court of Appeals for the Third Circuit has directed district courts to weigh certain factors, known as "the *Pennypack* factors": (1) the surprise or prejudice to the moving party; (2) the ability of the moving party to cure any such prejudice; (3) the extent to which allowing the testimony would disrupt the order and efficiency of trial; (4) bad faith or willfulness in failing to comply with the court's order; and (5) the importance of the testimony sought to be excluded. *See Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904-05 (3d Cir. 1977), *overruled on other grounds*, *Goodman v. Lukens Steel Co.*, 777 F.2d 113 (3d Cir. 1985); *see also Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997).

### C. Motions to Compel Discovery

Under Federal Rule of Civil Procedure 26, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "For the purposes of discovery, relevancy is broadly construed." *Inventio AG v. ThyssenKrupp Elevator Americas Corp.*, 662 F. Supp. 2d 375, 380 (D. Del. 2009). The moving party "bears the burden of demonstrating the relevance of the requested information." *Am. Bottling Co. Inc. v. Vital Pharms., Inc.*, C.A. No 20-1268 (TMH),

2021 WL 9599683 (D. Del. Sept. 27, 2021) (citing *Inventio*, 662 F. Supp. 2d at 381). When a party withholds otherwise discoverable information on the basis that the information is privileged, the party must "(i) expressly make the claim; and (ii) describe the nature of the documents, communications, or tangible things not produced or disclosed--and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A).

Pursuant to Federal Rule of Civil Procedure 37, "a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). For purposes of a motion to compel, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." *Id.* at 37(a)(4).

## III. DISCUSSION

The Court reviews the Special Master's findings *de novo*. Upon such review, the Court overrules Defendant's objections.

### A. The Court Declines to Strike or Compel Discovery on Plaintiff's Damages Theory, But Orders the Parties to Meet and Confer Regarding Additional Discovery

Defendant's first objection regards its motion to strike or compel discovery on Plaintiff's damages theories, on the basis that Plaintiff untimely disclosed its royalty fee claim and never provided a computation of damages or expert witness testimony on the issue. D.I. 158 at 6-7. Plaintiff responds that its disclosure of new damages theories prior to the close of fact discovery was timely and that it offered Defendant a deposition on this issue. D.I. 161 at 3-4.

The Court agrees with Plaintiff. All of Plaintiff's supplementations to its disclosures were made before the close of fact discovery, albeit close to the deadline. Plaintiff first made Defendant

aware of its damages theories broadly on July 10, 2025, then made a significant supplementation on April 6, 2026 wherein it added a lost profits claim. D.I. 158 at 2. Plaintiff then supplemented its disclosures again twice on May 28, 2026, adding a royalty fee claim. *Id.* at 3. Because Plaintiff supplemented its disclosures after the depositions of its Rule 30(b)(6) witnesses, Plaintiff "offered Defendant a supplemental deposition on those amended disclosures." D.I. 161 at 4.

While it is best practice to avoid significantly supplementing disclosures so close to the fact discovery deadline, Defendant has identified no case law that warrants finding Plaintiff's supplementations untimely or improper simply because they were made near the close of fact discovery. *See Chervon (HK) Ltd. v. One World Techs., Inc.*, C.A. No. 19-1293-GBW, 2025 WL 2638959, at *5 (D. Del. Jan. 14, 2025) (finding disclosure of a damages theory on the deadline timely). Moreover, Defendant has been aware of Plaintiff's intention to pursue damages theories for over a year. Thus, since Plaintiff's disclosures were timely and proper, the Court will not analyze the *Pennypack* factors or strike Plaintiff's theories. *See Chervon*, 2025 WL 2638959, at *3. The Court will, however, grant Defendant leave to take a Rule 30(b)(6) deposition on damages to prevent any prejudice resulting from the fact that disclosure occurred after Rule 30(b)(6) depositions.

With respect to the production of documents, Defendant claims that Plaintiff has not provided any documentation regarding its damages theories and relevant computations. D.I. 158 at 7. Plaintiff responds that it has provided several documents pertaining to its damages theories, including "receipts for storage costs and testing of the API." D.I. 161 at 4. Although the Court generally agrees with Defendant that it is entitled to relevant, non-privileged information regarding the computations for Plaintiff's damages theories, and the Court may compel Plaintiff to provide such documentation if Plaintiff does not do so, the parties should meet and confer to discuss a

mutually agreeable scope of additional discovery regarding documents relevant to Plaintiff's damages theories before resorting to court intervention. If, after meeting and conferring, Plaintiff fails to produce relevant documents related to its new damages theories, Defendant may renew its request to compel discovery. In that same vein, the Court may prohibit Plaintiff from using such documents at trial if Plaintiff has not produced the same to Defendant. However, at this stage, the Court will not prematurely compel discovery.

For the above reasons, the Court declines to strike Plaintiff's damages theories, and Defendant's objections are overruled. The Court orders the parties to meet and confer regarding the scope of additional discovery on Plaintiff's damages theories, and grants Defendant leave to take a Rule 30(b)(6) deposition on the topic of damages.

**B. The Court Declines to Compel Discovery Regarding API Shipping Documents**

Defendant next contends that Plaintiff has deficiencies in its production regarding API shipping documents, and that it "must now correct its production process." D.I. 158 at 8. This issue arises from an "incomplete collection of shipping documents" which was not produced until the close of fact discovery because, according to Plaintiff, "these materials fell outside the agreed ESI search terms and timeframe." *Id.* at 8-9. Plaintiff eventually produced these documents before the close of fact discovery and, thus, claims that it is "not improperly withholding shipping or any other documents." D.I. 161 at 5-6.

The use of search terms in discovery "is imperfect and may exclude some relevant documents." *In re Diisocyanates Antitrust Litig.*, Master Docket Misc. No. 18-1001, 2023 WL 427082, at *3 (W.D. Pa. Jan. 26, 2023). Because discovery often involves "vast amounts of electronic information . . . [c]ourts cannot and do not expect that any party can meet a standard of perfection." *Enslin v. Coca-Cola Co.*, No. 2:14-cv-06476, 2016 WL 7042206, at *3 (E.D. Pa. June 8, 2016) (alteration in original) (quoting *Pension Comm. of Univ. of Montreal Pension Plan v.*

*Banc of Am. Sec.*, 685 F. Supp. 2d 456, 461 (S.D.N.Y. 2010)). Indeed, both parties in this litigation have made delayed productions on documents that could not be located using the parties' agreed-upon search terms. *See* D.I. 161 at 6. Given that Plaintiff already identified and produced the documents that Defendant requests, and absent a clearer picture of what exactly is missing, the Court is unsure what more Defendant seeks. Defendant has not articulated why it believes the shipping documents that Plaintiff produced are incomplete, or why Plaintiff's search parameters in locating said documents were inadequate. Thus, the Court is unpersuaded by Defendant's contention and accordingly declines to compel additional discovery regarding API shipping documents.

Relatedly, with respect to Request for Admission ("RFA") Nos. 6 and 7, Defendant contends that Plaintiff's responses are evasive, and that Plaintiff improperly imposed its own interpretation of the TSA in its responses. D.I. 158 at 9. Plaintiff responds that its responses fully comply with Federal Rule of Civil Procedure 36, and that it need not "admit the false assertions embedded in the RFAs that it properly denied." D.I. 161 at 7. The Court agrees with the general principle that Plaintiff cannot impose its theory into the case that documentation was not required in answering these RFAs. But the Court does not believe that Plaintiff has done so here. The RFAs ask whether Plaintiff *did* provide documentation regarding the API's supply chain and shipping, not whether it was *required* to provide documentation. Thus, while the RFAs ultimately bear on a disputed factual issue that is relevant to Defendant's defense, the RFAs do not themselves force Plaintiff to interpret the contract and answer whether it was required to provide Defendant with shipping documentation.

To that end, the Court reads Plaintiff's response to be complete. Plaintiff denies the RFAs in large part, which it is entitled to do under Rule 36. The Court reads Plaintiff's responses (and

its briefing on this issue) not as denying that it was *obligated* to provide the API documentation (an issue of contract interpretation), but rather, as denying the allegation that Plaintiff *did not provide* Defendant with the relevant API documentation. *See* D.I. 159-2, Ex. 20, at 5-6; *see* D.I. 161 at 7 (claiming that Defendant's RFAs contain "false assertions"). Thus, to the extent that Plaintiff maintains that it did provide Defendant with the API shipping documentation requested in RFA Nos. 6 and 7, its responses are complete, and Plaintiff may be held to that position in the future. Nevertheless, the Court cannot compel Plaintiff to admit something that, in Plaintiff's view, is factually incorrect.

For the above reasons, the Court overrules Defendant's objections with respect to its motion to compel discovery regarding API shipping documents and its motion compel Plaintiff to supplement its responses to RFA Nos. 6 and 7.

### C. The Court Declines to Compel Plaintiff to Give Defendant Former Employee Contact Information

Defendant's next contention is that Plaintiff has impeded Defendant's access to unrepresented former employees, which thwarts the purpose of Rule of Professional Conduct 4.2. D.I. 155 at 7. Plaintiff has represented that its outside counsel Potter Anderson represents all former employees, with the exception of Rob Parker. D.I. 161 at 8. This includes having Potter Anderson present at the third-party witness depositions. *Id.* As for Rob Parker, Plaintiff has provided Defendant with his contact information. *Id.* at 9.

In light of these circumstances, the Court is unpersuaded by Defendant's contention. It is true that the Court will not tolerate a party prohibiting its opponent from reaching out to third-party witnesses and former employees, and that the Court will not automatically assume that former employees are represented by Plaintiff's counsel. *See Carter-Herman v. City of Philadelphia*, 897 F. Supp. 899, 903 (E.D. Pa. 1995). However, there is no evidence that Plaintiff

has done either here. The record suggests that Plaintiff contacted its former employees and confirmed its representation of them. D.I. 161 at 9. With respect to Rob Parker, upon being unable to reach him, Plaintiff gave Defendant his contact information and also "advised Defendant that it was free to subpoena any former employee now outside of [Plaintiff's] control." *Id.* Thus, the Court is unconvinced that Plaintiff has engaged in any behavior violative of the Rules of Professional Conduct.

For the above reasons, the Court overrules Defendant's objections and declines to compel Plaintiff to give Defendant access to former employee contact information.[2]

## IV. CONCLUSION

For the above reasons, Defendant's Objections (D.I. 158) are overruled and the Special Master's Order (D.I. 155) is adopted.

* * *

WHEREFORE, at Wilmington this 7th day of October 2026, **IT IS HEREBY ORDERED** that:

1. Defendant Gordon Silver Limited's Objections to the Special Master's August 28, 2026 Order (D.I. 158) are **OVERRULED** and the Special Master's Order (D.I. 155) is **ADOPTED**.

2. By no later than seven (7) days from the date of this Order, the parties shall meet and confer and attempt to reach agreement on a mutually agreeable scope of additional discovery regarding Plaintiff's damages theories.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

[2] Based on the Court's analysis of all the issues presented in Defendant's Objections, the Court finds that the imposition of sanctions requested by Defendant (*see* D.I. 158 at 11) is inappropriate.